RANDY S. GROSSMAN
United States Attorney
NICOLE E. BREDARIOL
MA Bar: 696484
Special Assistant U.S. Attorney
U.S. Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-8419
Email: Nicole.Bredariol@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LUIS CHAVEZ (1),<br>LUIS MARIN (2),<br><br>Defendants. | Case No.: 21-CR-1021- DMS<br><br>**UNITED STATES' OMNIBUS SENTENCING MEMORANDUM**<br><br>Date: February 18, 2022<br>Time: 9:00 a.m. |

The UNITED STATES OF AMERICA, by and through its counsel, Randy S. Grossman, United States Attorney, and Nicole E. Bredariol, Special Assistant United States Attorney, hereby files its Sentencing Memorandum as to defendants Luis Chavez and Luis Marin. This memorandum is based upon the files and records of the case.

## I. INTRODUCTION

Luis CHAVEZ and Luis MARIN (collectively "Defendants") are before the Court for sentencing after pleading guilty to Possession of Cocaine with Intent to Distribute on Board a Vessel in violation of 46 U.S.C. § 70503.[1] A substantial sentence is warranted here. Maritime cocaine smuggling is complicated. The skill necessary for a crew of two

---

[1] Laboratory results determined that the 1 kilogram of suspected methamphetamine to which Defendants pled guilty for Possession of Methamphetamine with Intent to Distribute on board a vessel was cocaine. Accordingly, the United States will be moving to dismiss Count 3 of the Indictment at the sentencing hearing. This does not alter the base offense level for sentencing since Defendants were still found with over 1,000 kilograms of cocaine. USSG § 2D1.1.

men to transport cocaine on the high seas takes skill and experience. Engaging in a journey that will take days and requires navigating hundreds of miles on the ocean takes extensive preparation. Defendants relied on each other during this extended journey and worked together, utilizing their skill and acumen to try and achieve a significant reward – a payday.  After taking into consideration the seriousness of the offense, including the level of skill and preparation required to transport over 1000 kilograms (a literal ton) of cocaine, and the remaining 3553(a) factors, the United States recommends 84 months' custody followed by 5 years' supervised release, no fine, and a $100 special assessment.

## II. STATEMENT OF FACTS

### A. The Crime

On February 18, 2021, a maritime patrol aircraft detected a Go-Fast Vessel (GFV) approximately 655 Nautical miles (NM) west of the Galapagos Islands, Ecuador in international waters. United States Coast Guard Cutter BEAR was nearby and diverted to intercept the GFV.



The United States Coast Guard launched a helicopter and small boat with an embarked Coast Guard law enforcement team to intercept the GFV. As the Coast Guard smallboat approached the GFV the maritime patrol aircraft reported observing the Defendants on the GFV jettison what appeared to be a small bag, likely containing electronics.

The Coast Guard conducted a Right of Visit boarding and identified the two defendants in this case onboard the GFV. Both Defendants responded that they were the master of the vessel, and both made a claim of Ecuadorian nationality for the vessel. The Coast Guard enacted the US/EC OPPRO and conducted a forms exchange with Ecuador. Ecuador ultimately responded that it could neither confirm nor deny the nationality of the vessel. Therefore, the Coast Guard issued a Statement of No Objection and treated the vessel as without nationality ("TWON") and conducted a full law enforcement boarding.

One of the Defendants asked the Coast Guard boarding team if they went to jail if they could be in the same cell. Defendants later explained that they were asking about going to jail because they had drugs on the vessel and then pointed to the center compartment of the GFV, indicating the drugs were under the deck of the GFV. Defendants claimed the purpose of their voyage was to chase a dream and that their next port of call was anywhere in Mexico.



During the boarding of the GFV the Coast Guard noted that a hatch traditionally used as a fish hold was cut out from the deck and replaced, that the deck was soft and squishy in one portion, and that there were approximately 3 feet of unaccounted for space below the deck of the GFV for the entire length of the vessel. The GFV did not have any fishing gear, but it did have approximately thirty fuel tanks onboard. The Coast Guard drilled holes in the deck of the GFV. While drilling, Defendant MARIN leaned over and pointed at the deck of the GFV, seeming to indicate that the drugs were hidden in that location. The drill bit punctured something soft and when extracted had white powder on it that tested positive for cocaine.

The Coast Guard discovered the GFV had a false deck. The Coast Guard removed portions of the deck and discovered numerous packages hidden beneath, each approximately 1 kilogram in size. The Coast Guard recovered a total of over 1000 kilograms of cocaine.






Post-Arrest the Defendants provided various statements. Ultimately, agents discovered Defendants traveled from their homes in Ecuador to the Ecuador/Colombia border. They boarded the GFV which had 1,000 kilograms of cocaine hidden under the false bottom/deck. They departed on the GFV and transited for numerous days before they were interdicted by the Coast Guard. The Defendants were provided with additional fuel containers at numerous stops along their journey by various refueling vessels, usually pangas associated with fishing vessels in the area. Had they not been interdicted by the Coast Guard, Defendants were supposed to rendezvous with a Mexican based GFV. The cocaine would be extracted from the false bottom, transferred to the Mexican GFV, the original panga would be sunk, and the cocaine and Defendants would travel on the Mexican GFV to Mexico. Defendants were promised payment for their involvement.

**B. Defendant's Statements**

Post arrest Defendant CHAVEZ initially denied knowledge in the smuggling event and claimed that he thought he was hired to go fishing. However, this denial was inconsistent with other information he provided, and it was ultimately determined the Defendants were hired to transport the cocaine and offered payment. Inconsistent statements during CHAVEZ's post-arrest include that he said there were no cellular phones on the GFV, but later admitted the cellular phone seized from the GFV belonged to him and the phone number of the man who hired him could be found on his phone. He also admitted to throwing the radio in the water when the Coast Guard approached.

**III. THE GUIDELINES**

**A. Calculation**

Under USSG § 2D1.1 (c)(1), the base offense level is 38. The United States is not recommending any enhancements nor any reductions for role. There is a two-level downward departure for safety valve and a three-level downward departure for acceptance of responsibility. Defendant is in Criminal History Category I. The resulting guideline range is 135 to 168 months in custody. Pursuant to the plea agreement the United States is recommending 84 months in custody for each Defendant - a substantial

variance of 51 months or approximately a thirty seven percent reduction of the low end of the guideline range.

**B.      Government Recommendation**

Several factors justify the Government's recommendation. First, Defendant pled guilty to Possession of Cocaine with Intent to Distribute on Board a Vessel. Maritime drug smuggling is a complicated endeavor. The evidence demonstrates Defendants coordinated an at sea voyage spanning hundreds of nautical miles to transport a vast amount of cocaine valued at millions of dollars. Transporting cocaine on the high seas takes considerable skill and experience. That skill promised a significant reward. For Defendants that reward was monetary.

Second, this was a complicated smuggling venture for which Defendants preparation, expertise, experience, and efforts were critical. Each acted as more than a mere drug courier which this district often encounters for sentencing in land-based drug smuggling ventures. Maritime smuggling requires specialized skills, and men like Defendants are recruited because of their familiarity with the maritime environment. That required skill is evident in this case, where Defendants were discovered hundreds of miles from their home countries. Arriving to the interdiction location, over 655 NM from the Galapagos Islands, required each to prepare to be away from home for an extended period of time, to help navigate the vessel over a multi-day journey spanning hundreds of miles, and complete complicated at sea vessel rendezvouses. Over this extended time each was required to deal with all the difficulties that navigating on the high seas brings, including weather, sea state, and difficult communications. This requires expertise and experience and cannot be performed by just anyone. Unlike a simple drug courier who may only be responsible for drugs for a few hours and a few miles during a border crossing, this journey required Defendants to be responsible for the cocaine for hundreds of miles and days.

Third, the United States does not believe an adjustment for role, either aggravating or mitigating, is appropriate in this case. The United States is not arguing for a navigator enhancement. Defendants operated as a team, utilizing tremendous skill, training, and

acumen as discussed. Both were literally stuck in the same small boat, and equally culpable. Each Defendant is not less culpable than the average participant—let alone *substantially* less culpable. Defendants also understood the scope of this crime, each was to transit hundreds of miles with the hidden cocaine, rendezvous with various refueling vessels, then rendezvous with a pickup vessel and transfer the cocaine, and transport it to Mexico. Defendants were involved in planning for and preparing for the criminal activity. As the only two men on this vessel in the middle of the high seas each was in control of the vessel. Finally, Defendants stood to benefit from the criminal activity, and engaged in this crime for financial reasons.

Fourth, Defendants were responsible for trafficking an astounding amount of cocaine – 1000 kilograms – a literal metric ton of cocaine. While Defendants may claim each did not intend to come to the United States, their role in transporting the cocaine in the GFV was critical to the success of the trafficking venture and it was foreseeable the cocaine was bound for the United States. During a maritime drug smuggling venture the value of the drugs, and potential profit, increases exponentially. Had this cocaine successfully made it to the United States it would have been worth tens of millions of dollars. There is no doubt that had this highly dangerous drug successfully made it to the United States it could have led to extensive harm.

Fifth, given the need to generally deter others, it is essential the sentence reflects the seriousness of this offense and the potential harm from trafficking cocaine on the high seas. Only a significant sentence will discourage future potential traffickers from engaging in similar crimes. The incentive to make relatively large sums of money for trafficking drugs must be combated with the deterrence of significant sentences for engaging in this criminal activity. There is a need to impose a sentence that adequately deters others from engaging in this criminal activity for the hopes of financial reward.

Sixth, the substantial variance already recommended by the United States appropriately accounts for any variances based on the history and characteristics of the defendant or COVID-19. Defendants were entrusted to smuggle over 1,000 kg of cocaine

hundreds of miles while operating far from land with some autonomy. Their sentence should reflect their extensive culpability.

### C. Conclusion

Based on the 3553(a) factors a custodial sentence of 84 months, followed by 5 years' supervised release, no fine, and a $100 special assessment is appropriate for each of the Defendants.

DATED: February 11, 2022

Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

/s/ Nicole E. Bredariol
Nicole E. Bredariol
Special Assistant U.S. Attorney